UNITED STATES DISTRICT COURT FILED OCT 13 2026 ANDREW W. MOELLER, CLERK WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAMMY A.,[1]

Plaintiff,

v.

24-CV-965 (JLS)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

Plaintiff Tammy A. brought this action under 42 U.S.C. § 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 5. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 11, 12. For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Supplemental Security Income ("SSI"), filed on November 18, 2021.[2] Tr. 230–39.[3] Plaintiff's application was initially denied, and she requested a hearing before an administrative law judge ("ALJ"). *Id.* at 118–29, 147–49. Following the hearing, at which Plaintiff was represented by counsel, ALJ Paul Georger issued a decision finding that Plaintiff was not disabled. *Id.* at 19–29, 34–62. Plaintiff's request for Appeals Council review was denied, after which Plaintiff commenced this action. *Id.* at 1–3; Dkt. 1.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation modified).

---

[2] Plaintiff applied for SSI, which "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (citation modified).

[3] The filing at Dkt. 3 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 3 are hereby denoted "Tr. __."

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II. DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* § 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits

the claimant's ability to perform basic work activities. *Id.* § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* § 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Id.* § 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. *Id.* § 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in

the national economy exists that the claimant can perform given her RFC, age, education, and work experience. *Id.* §§ 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I. THE ALJ'S DECISION

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since November 18, 2021, the date her application was filed. Tr. 21. The ALJ also found that Plaintiff suffered from the following severe impairments: "degenerative joint disease of the bilateral knees" and "fracture of the left foot." *Id.* (citing 20 C.F.R. § 416.920(c)). The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. § 416.967(c), with the following limitations:

> [Plaintiff can] frequent[ly] handl[e], finger[], and feel[] bilaterally; can climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; and [can] balance, stoop, kneel, crouch, and crawl frequently. In addition, [Plaintiff] can tolerate only frequent twisting of the cervical (neck) and lumbar (waist) spine.

*Id.* at 22–23.

The ALJ then found that Plaintiff had no past relevant work. *Id.* at 27. But the ALJ determined that Plaintiff was not disabled because her age, education, work experience, and RFC allowed her to perform jobs existing in significant

numbers in the national economy. *Id.* at 27–28. As such, the ALJ concluded Plaintiff had not been under a disability—as defined by the Social Security Act—since the date her application was filed. *Id.* at 29.

## II. PLAINTIFF'S ARGUMENT

Generously reading Plaintiff's motion, she raises three arguments. *See* Dkt. 5-1, at 9–18. First, Plaintiff argues that the ALJ failed to consider adequately the consistency between the opinions of D. Brauer, M.D.; M. Kirsch, M.D.; Nikita Dave, M.D.; John Schwab, D.O.; and Joshua Usen, D.O. *Id.* at 9–12. Second, Plaintiff argues that the ALJ improperly formulated the RFC based on his lay opinion. *Id.* at 12–17. Finally, Plaintiff argues that the ALJ failed to develop the record with opinion evidence. *Id.* at 17–18. For the reasons that follow, the Court disagrees.

## III. ANALYSIS

### A. The ALJ properly evaluated the opinion evidence.

Under 20 C.F.R. § 416.920c, an ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 416.920c(a)–(c). Those factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id.* § 416.920c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion or prior administrative medical finding but need not expound upon the remaining three. *Id.* § 416.920c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

On April 7, 2022, Dr. Brauer completed a physical RFC assessment of Plaintiff. *See* Tr. 70–75. Dr. Brauer opined that she could sit, stand, and walk for about six hours in an eight-hour workday, could lift ten pounds frequently and twenty pounds occasionally, and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other hazards. *Id.* at 70–72. Dr. Brauer concluded that Plaintiff had the RFC to perform light work.[4] *Id.* at 74–75. Dr. Kirsch later reviewed the record and affirmed Dr. Brauer's findings. *See id.* at 87–92.

The ALJ found the opinions of Drs. Brauer and Kirsch "unpersuasive." *Id.* at 26. The ALJ noted that, "[w]hile they [we]re supported by explanation and inclusion of findings from the record, they [we]re inconsistent with the overall

---

[4] The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,] . . . a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

evidence." *Id.* More specifically, the ALJ found the opinions to be inconsistent with largely unremarkable consultative examinations and treatment notes from Plaintiff's primary care provider. *Id.*; *see id.* at 566–70 (finding the patient "healthy and well developed" with "[n]o signs of acute distress" during a physical exam).

On March 9, 2022, Dr. Dave completed an internal medicine examination of Plaintiff. *See id.* at 349–52. Dr. Dave opined that Plaintiff had mild limitations in "repetitive bending and twisting of the cervical and lumbar spine [and in] maintaining an awkward position of the head and neck for prolonged periods of time." *Id.* at 352. Dr. Dave also opined that Plaintiff had mild limitations in "heavy lifting, carrying, pushing, and pulling . . .[, and] repetitive crouching and kneeling." *Id.*

The ALJ found Dr. Dave's opinion "minimally persuasive." *Id.* at 26. The ALJ explained that it was "supported by exam findings showing decreased cervical and lumbar range of motion, with tautness and spasms in [Plaintiff's] trapezius." *Id.* The ALJ found, however, that the opinion was "inconsistent with the overall evidence[,]" including treatment notes showing normal cervical range of motion, *id.* at 344, 372, 581, unremarkable lumbar spine imaging, *id.* at 353, and Plaintiff's decision not to seek treatment for neck or back pain during the period at issue. *Id.* at 359 ("[Plaintiff] does not want a cortisone injection at the moment.").

On July 13, 2022, Dr. Schwab completed an internal medicine examination of Plaintiff. *See id.* at 538–45. Dr. Schwab opined that Plaintiff had a "fair" prognosis and only a "mild restriction to prolonged exertion." *Id.* at 541.

The ALJ found Dr. Schwab's opinion "minimally persuasive." *Id.* at 27. The ALJ noted that it was "generally consistent with the overall evidence showing largely unremarkable exams." *Id.* The ALJ also found that it was "supported by [Dr. Schwab's] exam findings[] showing full strength in all extremities and intact fine motor skills." *Id.*

Finally, on September 8, 2023, Dr. Usen, Plaintiff's primary care provider, completed a treating source statement on Plaintiff's behalf. *See id.* at 605–10. Dr. Usen opined that Plaintiff could stand for thirty minutes at a time and could sit for two hours at a time, but could never do either during the workday. *Id.* at 609. Dr. Usen also found that Plaintiff could occasionally lift up to five pounds and bend, but could not lift any weight on a frequent basis, work around dangerous equipment, or stoop. *Id.* at 609–10.

The ALJ found Dr. Usen's opinion "unpersuasive" despite Dr. Usen's status as "her treating provider." *Id.* at 27. The ALJ noted that the opinion was "unsupported by explanation and [] internally inconsistent." *Id.* The ALJ also noted that it was "inconsistent with [Dr. Usen's] largely unremarkable exam findings, showing only diffuse thoracic spine tenderness and tight muscles." *Id.*

Of course, the ALJ could have—and perhaps should have—discussed the regulatory factors in greater detail. But the ALJ addressed how well each provider supported their opinion and how consistent each opinion was with the record, *see* Tr. 22–27, just as the regulations required him to do, *see Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *1–2 (2d Cir. Jan. 9, 2024). And "[a]n ALJ need

not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of [that] decision.'" *Cichocki*, 729 F.3d at 178 n.3 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Nonetheless, Plaintiff argues that, in evaluating each opinion, the ALJ erred by failing to acknowledge the consistencies between them. *See* Dkt. 5-1, at 11–12. But contrary to Plaintiff's suggestion, the ALJ was not required to compare each individual medical opinion to every other individual medical opinion; instead, the ALJ needed only to address the consistency of the opinions with the remainder of the record. *See Villier o/b/o N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893-CV, 2024 WL 2174236, at *3 (2d Cir. May 15, 2024) (summary order) (explaining that an ALJ need not "discuss the consistency of each medical opinion with specific other opinions") (citing *Cichocki*, 729 F.3d at 178 n.3); *David C. v. Comm'r of Soc. Sec.*, 1:22-CV-965, 2024 WL 376598, at *4 (W.D.N.Y. Feb. 1, 2024) ("Notwithstanding the ALJ's apparent reference to the consistency between the opinions . . ., he was not required to specifically assess the consistency between their opinions as long as he considered their consistency with the record as a whole."). And, as Plaintiff acknowledges, the ALJ did just that. *See* Dkt. 5-1, at 11 ("[T]he ALJ evaluated these opinions' consistency with the record as a whole[.]"); Tr. 25–27 (evaluating and weighing the medical opinions).

Moreover, Plaintiff overstates the consistency between each opinion. *See* Dkt. 5-1, at 11–12. For example, Dr. Schwab found that Plaintiff had only mild limitations to prolonged exertion and identified no specific limitations. Tr. 541.

Dr. Usen, on the other hand, found Plaintiff more limited, opining that Plaintiff could never sit or walk during the workday and could lift, at most, five pounds occasionally. *See id.* at 609. Dr. Dave found Plaintiff more limited than Dr. Schwab, but less limited than Dr. Usen, opining that Plaintiff had mild limitations in various areas of physical functioning. *See id.* at 352 (limiting "repetitive bending and twisting" of the spine, heavy exertion, and "repetitive crouching and kneeling."). A more detailed analysis of *internal* consistency, therefore, would not change the ALJ's evaluation of the discounted opinions.

Upon review, the ALJ appropriately considered the supportability and consistency of Drs. Brauer, Kirsch, Dave, Schwab, and Usen's opinions in light of their own records and the other evidence in the record. *See Spottswood*, 2024 WL 89635, at *1–2; *Cichocki*, 729 F.3d at 178 n.3.

**B. The ALJ's RFC determination was supported by substantial evidence.**

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). That does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024) ("There is no blanket requirement that [an ALJ's] decision must be supported by a congruous medical opinion"). So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions,

an RFC consistent with the record is not error. *See* 20 C.F.R. § 416.945; *see also* *Cichocki*, 729 F.3d at 177 (joining five other circuits in holding that remand is not necessary "[w]here an ALJ's analysis at Step Four . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Here, there was ample evidence in the record to support the ALJ's decision. For example, and as noted above, the ALJ considered the opinions of Drs. Dave and Schwab. *See* Tr. 26–27. Dr. Dave opined, among other things, that Plaintiff had mild limitations in bending and twisting the cervical and lumbar spine and in maintaining prolonged awkward positions of the head and neck. *Id.* at 352. Dr. Schwab later examined Plaintiff and found only a mild limitation in prolonged exertion. *Id.* at 541.

The ALJ ultimately crafted an RFC that largely reflected Dr. Dave's and Dr. Schwab's opinions. *See* Tr. 22–23. Indeed, whereas Dr. Dave found that Plaintiff had mild limitations in bending and twisting of the cervical and lumbar spine and mild limitations in crouching and kneeling, *id.* at 352, the ALJ restricted Plaintiff to only frequent twisting of the cervical and lumbar spine and only frequent kneeling, crouching, and crawling, *id.* at 23. Likewise, while Dr. Schwab found Plaintiff to have just a mild limitation in prolonged exertion, *id.* at 541, the ALJ restricted Plaintiff to only medium work, *id.* at 22.

Moreover, the ALJ considered various treatment notes and examination findings, concluding that, "[t]he objective medical evidence . . . d[id] not support the

degree of limitation alleged." *Id.* at 24. For example, the ALJ noted that, at visits with Plaintiff's orthopedist, Kafai Lai, M.D., Plaintiff reported improved knee pain with home exercises and bracing. *See id.* at 25. The ALJ discussed further that, apart from a finding of thoracic spine tenderness, Plaintiff's annual physical yielded largely unremarkable results. *Id.* at 26. And the ALJ recounted a July 2022 consultative examination, which revealed normal gait, full range of motion in the cervical spine, and full upper and lower extremity strength. *Id.* at 25.

Finally, the ALJ considered Plaintiff's activities of daily living, finding that they did not support the degree of limitation she alleged. *Id.* at 24. Citing Plaintiff's function report and medical records, the ALJ indicated that she "prepare[d] simple meals, care[d] for a small dog, . . . [and went] out alone." *Id.*; *see id.* at 266–69, 543. The ALJ noted further that Plaintiff "d[id] some cooking, cleaning, and laundry." *Id.*

At its core, Plaintiff's argument is a disagreement with the ALJ's weighing of the evidence. But it is not the function of this Court to re-weigh evidence or determine *de novo* whether Plaintiff is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and a searching review of the record reveals that consistency, his decision is supported by substantial evidence, and this Court will not second-guess it. *See Biestek*, 587 U.S at 103 ( "[T]he threshold for [substantial] evidentiary sufficiency is not high" in the SSA context); *Genier v. Astrue*, 606 F.3d

46, 49 (2d Cir. 2010) ("Even where the administrative record may adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.").

**C. The ALJ did not err with respect to his duty to develop the record.**

Because a hearing on disability benefits is a non-adversarial proceeding, "the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (citation modified); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (An ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (citation modified)).

Plaintiff argues that the ALJ "should have developed the record for some opinion evidence upon which to rely in assessing the RFC." Dkt. 5-1, at 17. In particular, Plaintiff contends that because "all five of [the medical] opinions were rejected," the ALJ's findings were based "upon his own lay opinion" in violation of this circuit's guidance. *Id.* at 11, 17. Because the ALJ did *not* in fact reject all five medical opinions and, in any case, based his opinion upon legitimate medical evidence in the record, Plaintiff's argument fails.

This circuit has repeatedly held that an ALJ "cannot arbitrarily substitute his own judgment for [a] competent medical opinion," nor can an ALJ set his or her "own expertise against that of a physician." *McBrayer v. Sec'y of Health and Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983). Petitioner is therefore correct that where an ALJ rejects all medical opinions without citing *any* other medical opinion or evidence, this circuit has remanded for reconsideration—but that is not the case here. *See Balsamo v. Chater*, 142 F.3d 75, 81–82 (2d Cir. 1998) (remanding in part due to the ALJ's reliance on non-medical evidence to reject the medical opinions of each treating physician). While the ALJ found the opinions of Drs. Brauer, Kirsch, and Usen to be "unpersuasive," Tr. 26–27, he found the opinions of Drs. Dave and Schwab "minimally persuasive." *Id.*

Moreover, and as noted above, an ALJ's decision need not be based on opinion evidence to be adequately supported by the record. *See Rubin*, 116 F.4th at 155. Even were the ALJ to have rejected all five of the medical opinions in the record—and he did not do so—an ALJ's factual determinations may be "adequately supported by more than a mere scintilla of evidence" when based on a comprehensive evidentiary record in the absence of a medical opinion. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). The hearing transcript contains 292 pages of medical records, including reports on orthopedic exams and regular checkups authored by Dr. Lai, *see* Tr. 424–536, and pain management sessions with Dr. Amrit Singh, *id.* at 321–22, 391–94. In addition to the ALJ's careful

consideration of the medical opinions from Drs. Brauer, Kirsch, Usen, Dave, and Schwab, his comprehensive step-four review directly cites Dr. Lai's findings, *id.* at 25. And during the hearing, the ALJ explored Dr. Singh's treatment history and outcomes with the Plaintiff. *Id.* at 55. Nothing in the opinion indicates that the ALJ "rel[ied] on his own lay read of the record with no functional assessment to inform" him, as Petitioner claims. Dkt. 5-1, at 17.

The medical opinions of Drs. Dave and Schwab and the diagnostic medical evidence in the record—*e.g.*, Drs. Lai and Singh's reports—provided a substantial basis for the ALJ's decision, without an "obvious gap" demanding further development. *Rosa*, 168 F.3d at 79 n.5. The ALJ thus did not err with respect to his duty to develop the record.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 11) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 5). The Clerk of the Court shall close this case.

SO ORDERED.

Dated: October 13, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE